SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY v. N. B. TUCKER.

Decided April 9, 1908.

**1.—Negligence—Rotten Telegraph Pole.**

Evidence considered and held sufficient to support a submission of the question of defendant's negligence in case of a telephone lineman injured by the fall of a telephone pole from decay beneath the surface of the ground.

**2.—Personal injury—Pleading—Harmless Error.**

Overruling special exceptions to allegations of personal injury because not sufficiently specific, was not ground for reversal where such general pleading was followed by more specific statements of the injuries, and the recovery was limited to these items.

**3.—Master and Servant—Inspection—Evidence—Charge.**

Evidence as to the general duty, under the master's rules, of linemen employed by a telephone company to inspect the condition of its poles, was insufficient to require the submission of a requested charge imposing this duty

on the injured plaintiff, where he was employed for a day only, to do certain special work, and nothing was said to him about inspection.

**4.—Same.**
     Where the method of inspection of its poles practiced by a defendant telephone company would not have discovered the defect, and was in fact used by the injured servant without discovering it, and the charge relieved defendant from liability if the danger was obvious or should have been known to plaintiff, a charge requiring of him the duty to inspect was properly refused.

**5.—Argument of Counsel.**
     Where improper language of counsel in argument was promptly withdrawn on objection, the jury instructed to disregard it, and the verdict apparently not excessive, no cause for reversal therefor is shown.

Appeal from the District Court of Brazos County. Tried below before Hon. J. C. Scott.

*McLaurin & Wozencraft, W. S. Bramlitt, D. A. Frank* and *Geo. D. Neal,* for appellant.

*V. B. Hudson,* for appellee.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Brazos County some time during the year 1905, by the appellee, N. B. Tucker, to recover of the appellant damages in the sum of $1999.50 for personal injuries sustained while in the service of the appellant. The facts show substantially that the appellant owns and operates a line of telephone wires in and through the town of Bryan; that at the time the injuries occurred it was necessary to cut the wires that passed over a certain street in the town of Bryan, in order to permit the passage of a church which was being moved. Clopton, who was the division inspector of the appellant, and who had charge of that particular portion of the appellant's line, was sent to Bryan for the purpose of having the work done. Upon arriving there he concluded that he needed the services of some other linemen to assist him in doing the work that was required to permit the passage of the church. He accordingly employed the appellee, Tucker, for that day only, to assist him in cutting the wires over the street along which the church was to pass. The appellee was instructed by Clopton to ascend a telephone pole on the north side of the street, and at the same time a man by the name of Eaves was directed to ascend another telephone pole on the opposite side. The instructions given to the two men were, to cut the wires between the two poles so that there would be no obstruction to the steeple of the building in passing. The two linemen were to cut the wires at each end at the same time, in order to prevent some confusion resulting to the line. There were something like eighteen or twenty wires to be clipped in this manner. When all had been cut-except one, the pole upon which Tucker was working began to fall and fell slowly for some distance, when it increased its motion and fell rapidly to the ground, resulting in the injuries complained of in the appellee's original petition, and for which he recovered a judgment. The pole broke off just about the top of the ground; some of the witnesses testify about an inch below

the surface; all testify that it was rotten and that only a small por-
tion of the outer surface was sound, the dimensions of this rim of
sound wood varying according to the estimates of the witnesses, some
stating that it was 1/16 of an inch in thickness, while others make
it a little thicker, but all agree that beneath the ground the pole
was entirely rotten and that the fall was occasioned solely by reason
of the fact that it was rotten.  The evidence tending to show the pole
had been in place something like six years, was of white cedar, and
that the life of such poles varies from ten to fifteen years, twelve
years being the general average.  There is nothing in the record to
indicate whether this pole was new when placed in its present position,
or what its condition was.  The evidence supports the conclusion that
there had been no inspection further than a superficial observation of
the pole after its erection, the appellee stating that when he was di-
rected to ascend the pole he kicked it with his spur, as he generally
did, for the purpose of ascertaining whether or not it was sound, and
that to all appearances it seemed to be so; that he believed it was
sound at the time he climbed it, and that it was sufficient to sustain
his weight and the additional strain that would be put upon it by
clipping the wires between that and the one on the opposite side of
the street.  No issue is made as to whether or not the pole was not
otherwise properly sustained by guys, and that other precautions were
taken to prevent an undue strain being imposed by releasing it from
the support of the wires on the opposite side of the street—in fact, the
rotten condition of the pole was shown to be the sole cause of its
giving way at the time it did.  The case was tried in the District Court
before a jury, resulting in a verdict in favor of the defendant in the
sum of $1500 on the .... day of September, 1905,  From that judg-
ment an appeal was taken which was heard in the Court of Civil
Appeals of the Fourth Supreme Judicial District, and the case was
reversed and remanded.  The case was again tried, resulting in a
verdict in favor of the appellee for the sum of $1625; and from that
judgment this appeal is prosecuted.

The appellant's first and second assignments of error complain of
the refusal of the court to grant its motion for a new trial, based
upon various grounds stated, charging an insufficiency of the testimony
to sustain the verdict of the jury.  In the third assignment error is
charged on account of the refusal of the court to give a peremptory
instruction to the jury to return a verdict in favor of the appellant,
upon the same ground.  We think the evidence was amply sufficient
to warrant the court's action, and therefore overrule all of these assign-
ments.  Dupree v. Alexander, 29 Texas Civ. App., 31; Southwestern
Tel. & Tel. Co. v. Tucker, 98 S. W., 909.

Under eight different assignments of error the appellant attacks the
plaintiff's original petition as being too general in the statement of
the injuries for which recovery is sought.  It seems that a number
of special exceptions had been urged in the court below, presenting
almost every conceivable objection to the language employed by the
appellee in setting forth his injuries, all of which were by the court
overruled.  The appellee in his petition states his injuries in the fol-
lowing language:

"The pole broke and fell with and threw the plaintiff violently to the ground causing the plaintiff great pain and serious injuries, and was greatly injured, wounded and sprained, and was bruised and lacerated in and about his body, face, legs and arms, and was thereby injured, sprained, strained, wrenched and shocked in his body, head, legs, arms, back, spinal column, spinal cord, hip, hip joints, and bruised, injured and lacerated the muscles, bones, nerves, ligaments and tendons thereon, and breaking his left arm and thereby injuring his left arm and hand to such an extent as to cause it to become permanently stiff, paralyzed and incurable, and rendered useless to him for any character of work, particularly that of a telephone lineman. That he was thereby bruised over his bowels, his left knee and ankle sprained and dislocated and left wrist dislocated and broken. That as a result of said injuries as aforesaid he has suffered and continues to suffer the most intense pain and mental anguish."

The injuries testified to as having been sustained by the appellee were as follows: a gash over the right eye; the left knee injured, sprained and wrenched; bruise over the bowels; great physical pain and suffering; the left wrist broken and dislocated about the joint, in consequence of which it had become stiff and the injury said to be permanent. This latter appears to be the principal injury upon which the claim for damages was based. It seems to us that the most fastidious pleader should be satisfied with the allegations as set out in the petition in this case. While it is true there are some general allegations as to the injuries appellee claims to have sustained, which might have called for more specific averments, yet these allegations are followed and the objections fully met by more specific language giving with minute detail the injuries relied upon for recovery. No effort was made to recover for any injuries not set out in the most careful detail embodied in the petition. In a case like the present, where a special exception is presented to the general allegations of a petition, and is overruled, but the recovery is limited to those items which are sufficiently alleged to meet the demands of such an exception, it certainly can not be contended that the judgment should be reversed solely because of the technical error of the court in overruling the exceptions to those general averments upon which no recovery was had. The error, if any, in a case of that kind would be considered harmless.

Objection was made to the action of the court in permitting the plaintiff to testify that he had a gash cut over his right eye, because there was no sufficient pleading to warrant such testimony. How serious this gash was, and what pain or suffering resulted from it, we are not informed by the record. The allegations in the petition were, as stated above, sufficient, we think, to permit testimony as to this gash. The laceration alleged by the plaintiff covered almost every portion of his body from his feet to the top of his head; and we certainly think they were sufficient to include a laceration over the eye. Southwestern Tel. & Tel. Co. v. Tucker, supra.

In the fourteenth assignment of error an exception was urged to the exactness with which the plaintiff states the total amount of his damages, and objection is made to the petition because it fails to disclose the basis upon which he calculated with such mathematical nicety

the damages sustained. It seems to us that the criticism contained in this assignment is, to say the least of it, hypercritical.

The sixteenth assignment of error is based upon the refusal of the court to give the following special charge:

"You are instructed that if you find and believe from the evidence that it was the duty of the plaintiff, N. B. Tucker, to inspect the pole upon which he claims to have been hurt, as alleged in his petition, and that the accident, if any, in which he was hurt, was due to the defective condition of said pole, that in that event the defendant would not be liable for any injury so sustained by the plaintiff, and you will find for the defendant."

The only testimony that could be relied upon to authorize the giving of this special instruction is that of the appellant's witness, Maas, its division superintendent. This witness knew nothing of the contract of employment between Tucker and Clopton, but simply gave his opinion of the general duties imposed by a contract with a lineman, employed as such. He stated that it was the duty of one employed as was Tucker, on this occasion, to inspect the pole for the company's sake as well as for his own safety. Tucker testified that he was not employed on this occasion to inspect poles, but only to cut those wires. Clopton, who employed him, testified that he engaged Tucker to cut those wires and to do whatever work he was directed to perform by him, Clopton, and that the employment was for that day only. The only directions given Tucker, so far as shown by the record, were to ascend the pole and cut the wires. This he was engaged in doing at the time of the fall. Clopton was present when Tucker ascended the pole, and said nothing about any further inspection of the pole beyond what they gave it. Tucker was not furnished with any tools adapted to a more thorough inspection, and was in no situation to make it. Clopton was the inspector of the appellant, employed regularly for that business. The testimony of Maas as to what was the duty of Tucker under his contract of employment was simply the opinion of the witness, and was entitled to no consideration whatever. The duties of Tucker were to be determined by his contract of employment, not by what some other person might think his duties were. It may be that a lineman in the regular service of a telephone company is charged with the duty of inspecting for the company the poles that come under his observation, as an incident to his employment; but a special contract of employment, like the one here involved, must be construed according to its terms. Assuming that it was the duty under the circumstances for the appellee to make an inspection for the benefit of the company of this particular pole, the testimony shows that he made just such an inspection as the company required and was its custom. Clopton says the only way by which the rotten condition of this pole could have been ascertained was by digging or probing into it under the surface of the ground. The witness Maas said that he had never heard of a system of inspection by which one was required to dig under the ground and there examine; that one way of ascertaining whether a pole was rotten under the ground or not is to take a pick and run it into the pole; that is one way of finding it out; you could also take a brace and bit and discover it. But the

witness had never heard of either of those means being employed by a telephone company to ascertain the condition of a pole. They were means that could be used, but witness never saw either of them employed for that purpose. Clopton, the appellant's division lineman and inspector, who was present and examined the pole before Tucker ascended it, testified that he had never in his experience as a lineman heard of men carrying a pick, or other implements, to dig under the ground for an inspection; that there was no way to detect the rotten condition of this pole by the usual and ordinary method of inspection. He also stated that he gave this pole such an inspection as he thought necessary, and considered it safe to climb. From this it appears that both Tucker and Clopton gave the pole such inspection as was made customary by the requirements of the company for which they were at work, and the giving of the special charge referred to and requested would have in effect told the jury that if it was found to be the duty of Tucker to make an inspection for the company, he should have made one much more thorough than the evidence showed was exacted by the rules and regulations of the master. It would have imposed upon Tucker the duty of doing more than the employer required or expected. This, we think, would have been prejudicial error against the appellee. But there is still another reason why we think the court should have refused this charge. At the instance of the appellant the court gave the following special charge:

"You are instructed that if the accident to plaintiff was the direct and proximate result of the defective condition of the pole upon which plaintiff was at work, and such defective condition could have been discovered by a proper inspection of said pole, and the plaintiff knew that a proper inspection had not been made, and knew the danger, if any, to which he was exposed by reason thereof, or such danger was obvious, or must in the preformance of his work as a telephone lineman have been known to him, then in either such event you are charged that he assumed the risk which might arise from the dangerous situation, and the defendant would not be liable in damages to plaintiff."

This charge was based upon evidence showing that no more than a superficial inspection, such as was customary with the company, had been made of the pole, and that the plaintiff was aware of that fact; and the jury was instructed that plaintiff assumed whatever risk there was in undertaking to climb the pole with such an inspection. This special charge, we think, sufficiently presented the issue of assumed risk in climbing the pole without first ascertaining that a proper inspection had been made. Manifestly the jury concluded from the evidence that no proper inspection had been made of this pole, and that the danger was not obvious to plaintiff nor was it made so by his duty as a lineman; for without such a finding no verdict could have been rendered in favor of the appellee. In view of the fact that appellant's witnesses testified that the usual and customary inspection had been given this pole on this occasion, we think this special charge gave to the appellant whatever instructions it was entitled to have upon the issue of the risk assumed by appellee in ascending the pole without any further inspection. We think the court correctly refused the

special charge requested. Dupree v. Alexander, 29 Texas Civ. App., 31, and cases cited; San Antonio Edison Co. v. Dixon, 17 Texas Civ. App., 321; International & G. N. Ry. Co. v. Elkins, 54 S. W., 931.

What we have said also disposes of the appellant's eighteenth assignment of error.

Special charge No. 9 was refused by the trial court, and is complained of in the seventeenth assignment of error. This charge was fully covered in the court's general charge.

Complaint is also made because of certain remarks made by the attorney for appellee, in his closing address to the jury. The offensive language was promptly withdrawn upon objection being made, and the court also instructed the jury to disregard it. The size of the verdict found for the plaintiff was not such as to indicate that the minds of the jurors had been inflamed by any improper language. Gulf, H. & S. A. Ry. Co. v. Smith, 93 S. W., 187.

Finding no error in the judgment of the court below, it is accordingly affirmed.

*Affirmed.*

Writ of error was granted by the Supreme Court, and judgment reversed and cause remanded, the evidence being held legally insufficient to show negligence of defendant. Southwestern Tel. & Tel. Co. v. Tucker, 102 Texas, 224.